**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO**

| | | |
|---|---|---|
| Kara Risner, | * | |
| | | Case No. 3:22-cv-1070 |
| Plaintiff, | * | |
| | | Judge |
| v. | * | |
| | | Magistrate Judge |
| AutoZoners, LLC | * | |
| c/o CT Corporation System | | **COMPLAINT** |
| 4400 Easton Commons Way Ste. 125 | * | |
| Columbus, OH 43219, | | **JURY DEMAND ENDORSED HEREON** |
| | * | |
| Defendant. | | |
| | * | |

Now comes Kara Risner ("Plaintiff"), who proffers this Complaint for damages against

AutoZoners, LLC ("Defendant") as follows:

## I.    JURISDICTION AND VENUE

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"); Ohio Revised Code §§ 4112.02, *et seq.*, as

amended; and the common law of the State of Ohio.

2.    This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as

this Complaint raises additional claims pursuant to the laws of Ohio over which this Court

maintains supplemental subject matter jurisdiction because they form a part of the same case or

controversy.

3.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant

employed Plaintiff in the Northern District of Ohio and a substantial part of the events or omissions

giving rise to the claims occurred in the Northern District of Ohio.

## II.     PARTIES

4.      Plaintiff is a female individual, a United States citizen, and a resident of the State of Ohio living in the Northern District of Ohio.

5.      Plaintiff was employed by Defendant beginning on October 7, 2020 and until approximately October 12, 2020 at its Kenton, Ohio store located at 307 W Franklin St, Kenton, Ohio 43326 ("Kenton Store").

6.      Plaintiff was employed as a part-time salesperson.

7.      Defendant is a foreign limited liability company that operates and conducts substantial business activities throughout Ohio, including in the Northern District of Ohio.

8.      Defendant is an "employer" pursuant to 42. U.S.C. § 2000e(b) and O.R.C. § 4112.01(A)(2).

9.      Specifically, Defendant is "the leading retailer and a leading distributor of automotive replacement parts and accessories in the U.S."[1]

## III.    STATEMENT OF FACTS

10.     Plaintiff interviewed to work at Defendant's Kenton Store on September 28, 2020, and conducted her interview with Julio Cuesta, the Kenton Store's manager ("Kenton Manager"), who thereafter offered employment with Defendant. During the interview, the Kenton Manager commented about Plaintiff, saying she was "very pretty, great smile." During the same conversation, the Kenton Manager also told Plaintiff that she had to go out and "get her groove on" and "get her a little something something." He later repeated the statement that "[she] was out here trying to get [her] groove back" as well as saying that Plaintiff was "nice to look at."

---

[1] *About Autozone*, AUTOZONE, https://about.autozone.com/ (last visited June 20, 2022).

11.     Plaintiff also asked the Kenton Manager if there was any reason that he would need her phone number for work purposes, to which he responded, "Oh yeah, already wanting me to have your digits," adding that he could be showing her "some real interesting texts and pictures." Plaintiff quickly and firmly rejected any offer to be shown texts or pictures by the Kenton Manager.

12.     Defendant offered Plaintiff employment on October 7, 2020, and she accepted. Plaintiff signed employment papers by e-mail and was told she would be notified of her starting date shortly thereafter.

13.     On or around October 6, 2020, Kenton Manager called Plaintiff to notify her of her start date, October 10, 2020, and instructed her to wear a gray polo shirt when she began work. Plaintiff reported for her first day of work the morning of October 10, 2020 but, upon her arrival, was told by the Kenton Manager that she was wearing the wrong color of polo shirt and sent home to change.

14.     Plaintiff went to her parents' home nearby to find a more suitable polo shirt to wear for work. While there, Plaintiff received a text message from the Kenton Manager informing her to FaceTime him once she had changed so that he may determine whether or not she was wearing the correct type of polo shirt. She FaceTimed him and, upon seeing her shirt, the Kenton Manager made an indirect sexual comment about how the shirt was accentuating her breasts.

15.     After returning to the Kenton Store wearing the new polo shirt, Plaintiff was approached by a female assistant manager, Kim Sherwood.

16.     Plaintiff and Sherwood began to engage in a conversation related to work, but Sherwood also gave a warning to Plaintiff about the Kenton Manager and his reputation for harassing other women.

17.    Plaintiff thereafter performed a variety of onboarding/training activities to begin her employment.

18.    Once Plaintiff completed these activities, she then began to shadow the Kenton Manager to learn more about her daily job duties.

19.    Plaintiff continued her first day on the job, and the Kenton Manager walked the aisles of the Kenton Store with her to show how everything was organized and which products were located within each aisle.

20.    While they were in the parts department, the Kenton Manager told Plaintiff that he had a big truck and commented that "you know what they say about big trucks—that the men are overcompensating for something." The Kenton Manager continued by explaining that he has a vanity license plate on his big truck that reads "2 inch life," explaining that this license plate was a reference to men who have big trucks to compensate for smaller genitalia.

21.    Throughout the remainder of the day, the Kenton Manager continued to make passing comments to Plaintiff about his vanity license plate that read "2 inch life."

22.    These comments were at first taken by Plaintiff in a half-joking manner, although she was still uncomfortable and only outwardly took the comments in such manner because she was a new employee.

23.    Shortly thereafter, and in the store, the Kenton Manager told Plaintiff that he would show her that he was not living the "2 inch life," to which Plaintiff quickly rejected the offer, stating that she did not want him to do so.

24.    The Kenton Manager went on to tell Plaintiff a story about a time he went to the Bureau of Motor Vehicles ("BMV") and how upset the BMV female employee helping him

became because of what he wanted his license plate to say (i.e., "2 inch life"); the Kenton Manager further stated how hilarious the interaction had been to him.

26. At various points throughout the same workday, the Kenton Manager continued to engage in the same inappropriate and unwelcomed subject matter with Plaintiff, who repeatedly told the Kenton Manager that she did not care and was not at all interested in discussing the matter further.

26. Despite the foregoing, the Kenton Manager kept making comments about his license plate while Plaintiff was shadowing him as part of her training, and in response Plaintiff kept telling the Kenton Manager about her distaste for and disinterest in these conversations.

27. At the end of Plaintiff's scheduled shift, around lunchtime, the Kenton Manager asked her to go to a nearby restaurant with him.

28. Plaintiff inquired about whether or not this restaurant visit was work-related, to which the Kenton Manager replied affirmatively, saying he wanted to review her first day of work and talk about certain scheduling conflicts that had arisen.

29. Plaintiff later discovered that such "scheduling conflicts" were wholly related to the fact that the Kenton Manager had purposely changed the schedule (originally set up by Sherwood) to have all of Plaintiff's shifts overlap with when the Kenton Manager would also be working.

30. Plaintiff agreed to go to the restaurant with the Kenton Manager under the impression that such visit was work-related and drove separately from him to the restaurant, arriving at or around 1:00 p.m.

31.     While inside the restaurant, Plaintiff (who was done working for the day) and the Kenton Manager each ordered a beer and discussed the day's events at work; they spent a short amount of time inside, as the Kenton Manager stated that he was in a rush to return to the store.

32.     As they exited the restaurant at or around 1:30 p.m., the Kenton Manager walked Plaintiff to her car and began to initiate another conversation about his license plate slogan, "2 inch life"; Plaintiff again responded that she did not need or want to know and would be leaving the restaurant.

33.     As Plaintiff unlocked and entered the driver's side of her vehicle, the Kenton Manager told her that he still had work-related matters to discuss with her.

34.     Under the guise of the Kenton Manager's self-stated work-related matters, he then proceeded to enter the passenger's side of Plaintiff's vehicle and instructed her to drive around to the side of the restaurant.

35.     Confused, Plaintiff asked the Kenton Manager why she needed to do so, and the Kenton Manager responded that he still needed to prove to her that his license plate slogan was a joke and not true concerning the size of his genitalia. Before doing so, the Kenton Manager instructed Plaintiff to drive to a more private side of the restaurant. Plaintiff refused.

36.     The Kenton Manager then threatened her when he told Plaintiff that if she did not do as he demanded, he would expose his genitalia to her where she was currently parked.

37.     Plaintiff refused to drive around to a more private side of the restaurant, but the Kenton Manager continued to tell Plaintiff that he wanted to show her his genitalia.

38.     Plaintiff more assertively and confrontationally refused to do as the Kenton Manager demanded and told him to exit her vehicle, turning both her face and body away from the Kenton Manager out of fear that he would expose his genitalia to her while still in her vehicle.

39.     Plaintiff then began screaming repeatedly for the Kenton Manager to exit her vehicle.

40.     However, it was at this point that the Kenton Manager exposed his genitalia in front of Plaintiff and in her vehicle, telling her that she had to turn back toward him to see that he was not living the "2 inch life."

41.     Ignoring this demand, Plaintiff instead kept her face and body turned away from the Kenton Manager, pressing herself against the driver's side window as far as possible from him, refusing to turn toward him, and continuing to scream at him and telling him to exit her vehicle.

42.     The Kenton Manager kept insisting on his demand and then grabbed Plaintiff's neck, forcing her face and body back toward him. Plaintiff asked the Kenton Manager, "If I look at it will you get out of the car," to which he responded, "I have to prove [that I am not living the '2 inch life'] to you."

43.     Forcibly and entirely against her will, Plaintiff then saw the Kenton Manager's exposed genitalia, which was erect, and again screamed at him to let go of her and to exit her vehicle.

44.     With the Kenton Manager ignoring Plaintiff's screaming, Plaintiff became more frightened of him, and he began pushing her further by telling her that he wanted her to touch his genitalia so that she would know it was "real" and how it felt.

45.     The Kenton Manager made numerous other attempts to have Plaintiff look at and touch his exposed genitalia but, after remaining unsuccessful, returned his exposed genitalia to his pants and began to ask Plaintiff if everything was "okay" and whether she would tell anyone about [his conduct].

46.     The Kenton Manager then proceeded to exit Plaintiff's vehicle, pressed his groin area toward her numerous times through the open door in a thrusting and sexually suggestive manner, and left.

47.     Plaintiff, having become exceedingly upset by this encounter, drove straight to her home and locked all of her doors. She could not sleep that night, feeling terrified that someone might break into her home and attack her again.

48.     On October 12, 2020, Plaintiff reported the incident to the police and the Hardin County Prosecutor.

49.     That same day, the Kenton Manager contacted Plaintiff and offered her the opportunity to come to work early that day. Plaintiff later responded that she could not come in that evening, and she was still trying to process the sexual harassment and assault she endured two (2) days earlier.

50.     The Kenton Manager responded by requesting that Plaintiff call him and pleading with her to come in to work. He also stated that he was going to find a new job and submit his two (2) weeks' notice.

51.     Since this incident, Plaintiff has not returned to the Kenton Store. She was constructively discharged, and, as a result of the sexual assault, has suffered severe emotional distress.

52.     Further, Plaintiff had to begin receiving specialized treatment following this incident as a consequence of psychological trauma suffered and continues to suffer from the same.

53.     Upon information and belief, prior to Plaintiff's employment with Defendant, the Kenton Manager had been transferred from a different store to the Kenton Store just three (3) months before the incident with Plaintiff occurred.

54.      Upon information and belief, one or more of Defendant's customers complained about the Kenton Manager's inappropriate conduct.

55.      Moreover, the Kenton Manager's harassing behavior was known to Defendant's employees, including one or more manager(s), yet he was permitted to continue his employment and as a supervisor/manager.

56.      Upon Plaintiff's informing Defendant about the incident, Defendant conducted an investigation into the matter. The Kenton Manager then terminated his employment upon conclusion of giving his written statement to Defendant on or around October 14, 2020.

57.      Prior to filing this Complaint, Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission. The EEOC issued a Notice of Right to Sue on May 9, 2022. Before issuing the Notice of Right to Sue, the EEOC concluded that the

> Charging Party was subjected to severe and pervasive sexual harassment by the Store Manager and the Charing objected to the harassment. Further, the evidence establishes that at least one Respondent official was aware of prior incidents of sexual harassment of an employee by the Store Manager and the Respondent failed to address and correct the sexual harassment. The evidence shows the working conditions were so adverse the Charging Party was forced to constructively discharge her employment.

58.      On February 7, 2022, the Kenton Manager pled guilty to Public Indecency and was sentenced to thirty (30) days in jail (with 20 suspended) and one (1) year of supervised probation, ordered to pay a fine, ordered to be fingerprinted, and further prohibited from having any contact whatsoever with Plaintiff.

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### TITLE VII – HOSTILE WORK ENVIRONMENT

59.    All of the preceding paragraphs are realleged as if fully rewritten herein.

60.    This claim is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., and as amended, for hostile work environment sexual harassment.

61.    Plaintiff is a member of a class protected from discrimination on the basis of sex.

62.    Plaintiff was subjected to unwelcomed harassment because of her sex by her male store manager, the Kenton Manager.

63.    This harassment was of a sexual nature because the Kenton Manager made several unwelcomed sexual comments about his genitalia and sexual activity in relation to Plaintiff and her status as a woman; further, the Kenton Manager exposed his genitalia to Plaintiff and propositioned sexual activity from her in relation to his exposed genitalia.

64.    This harassment, which offended Plaintiff and interfered with her ability to continue performing her job duties, was sufficiently severe and/or pervasive to create a hostile work environment in violation of Title VII.

65.    Defendant knew or should have known of the hostile work environment to which Plaintiff was exposed but failed to take reasonable action to prevent and/or stop the offensive conduct of the Kenton Manager toward Plaintiff.

66.    More specifically, Defendant knew or should have known that the Kenton Manager had at least one prior incident with inappropriate behavior, also constituting sexual harassment, while being employed by Defendant.

67.    Defendant is therefore vicariously liable for the actions of the Kenton Manager for perpetuating a hostile and discriminatory work environment causing severe injury to Plaintiff's

mental health and forcing her to terminate her employment with Defendant after only a single

workday.

68.     As a direct and proximate result, Plaintiff suffered a loss of enjoyment of life,

mental anguish, and emotional distress, and she is entitled to an award of compensatory damages.

69.     Defendant committed the above-described discriminatory acts with malice and/or

reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages.

## SECOND CAUSE OF ACTION:
## O.R.C. § 4112.02 – HOSTILE WORK ENVIRONMENT

70.     All of the preceding paragraphs are realleged as if fully rewritten herein.

71.     This claim is brought pursuant to O.R.C. §§ 4112, *et seq*., and as amended, for

hostile work environment sexual harassment.

72.     Plaintiff is a member of a class protected from discrimination on the basis of sex.

73.     Plaintiff was subjected to unwelcomed harassment because of her sex by her male

store manager, the Kenton Manager.

74.     This harassment was of a sexual nature because the Kenton Manager made several

unwelcomed sexual comments about his genitalia and sexual activity in relation to Plaintiff and

her status as a woman; further, the Kenton Manager exposed his genitalia to Plaintiff and

propositioned sexual activity from her in relation to his exposed genitalia.

75.     This harassment, which offended Plaintiff and interfered with her ability to

continue performing her job duties, was sufficiently severe and/or pervasive to create a hostile

work environment in violation of Title VII.

76.     Defendant knew or should have known of the hostile work environment to which

Plaintiff was exposed but failed to take reasonable action to prevent and/or stop the offensive

conduct of the Kenton Manager toward Plaintiff.

77.     More specifically, Defendant knew or should have known that the Kenton Manager had at least one prior incident with inappropriate behavior, also constituting sexual harassment, while being employed by Defendant.

78.     Defendant is therefore vicariously liable for the actions of the Kenton Manager for perpetuating a hostile and discriminatory work environment causing severe injury to Plaintiff's mental health and forcing her to terminate her employment with Defendant after only a single workday.

79.     As a direct and proximate result, Plaintiff suffered a loss of enjoyment of life, mental anguish, and emotional distress, and she is entitled to an award of compensatory damages.

80.     Defendant committed the above-described discriminatory acts with malice and/or reckless indifference to Plaintiff's rights, entitling her to an award of punitive damages pursuant to O.R.C. § 4112.99.

## THIRD CAUSE OF ACTION:
### TITLE VII – WRONGFUL TERMINATION (CONSTRUCTIVE DISCHARGE)

81.     All of the preceding paragraphs are realleged as if fully rewritten herein.

82.     This claim is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and as amended, for wrongful termination by way of constructive discharge.

83.     Because Plaintiff had to endure the persistent and unwelcomed sexual harassment from the Kenton Manager, who was her store manager and direct superior, her working conditions became so difficult and/or unpleasant that she felt compelled to resign.

84.     Plaintiff endured severe badgering, harassment, humiliation, and physically threatening conduct as a result of the Kenton Manager's sexually harassing behavior and activity as well as unwanted and unwelcomed touching.

85.     A reasonable person in Plaintiff's shoes would have also felt compelled to resign had they endured this same unwelcomed harassment as Plaintiff did because the persistence and severity of such harassment created an unsafe working environment.

86.     As a result of Plaintiff's inability to continue safely working at the Kenton Store, and feeling she had no other choice but to resign, her termination was entirely foreseeable and constitutes wrongful termination as a constructive discharge.

**FOURTH CAUSE OF ACTION:**
**O.R.C. § 4112.02 – WRONGFUL TERMINATION (CONSTRUCTIVE DISCHARGE)**

87.     All of the preceding paragraphs are realleged as if fully rewritten herein.

88.     This claim is brought pursuant to O.R.C. §§ 4112, *et seq.*, and as amended, for wrongful termination by way of constructive discharge.

89.     Because Plaintiff had to endure the persistent and unwelcomed sexual harassment from the Kenton Manager, who was her store manager and direct superior, her working conditions became so difficult and/or unpleasant that she felt compelled to resign.

90.     Plaintiff endured severe badgering, harassment, humiliation, and physically threatening conduct as a result of the Kenton Manager's sexually harassing behavior and activity as well as unwanted and unwelcomed touching.

91.     A reasonable person in Plaintiff's shoes would have also felt compelled to resign had they endured this same unwelcomed harassment as Plaintiff did because the persistence and severity of such harassment created an unsafe working environment.

92.     As a result of Plaintiff's inability to continue safely working at the Kenton Store, and feeling she had no other choice but to resign, her termination was entirely foreseeable and constitutes wrongful termination as a constructive discharge.

## FIFTH CAUSE OF ACTION:
## OHIO COMMON LAW – *KERANS*[2] CLAIM FOR SEXUAL HARASSMENT

93.     All of the preceding paragraphs are realleged as if fully rewritten herein.

94.     Defendant had a duty of care to Plaintiff and its other employees to provide a safe working environment free from a hostile work environment based on sex.

95.     Defendant breached this duty of care to Plaintiff by failing to take appropriate corrective action against the Kenton Manager for his past unlawful conduct and creating or suffering to permit the environment within which the Kenton Manager engaged in the sexually harassing behavior and conduct described above.

96.     Defendant therefore intentionally and/or negligently maintained or tolerated a policy or practice of encouraging, permitting, or condoning harassment based on sex.

97.     As a direct and proximate result of the above-described actions and inactions, Plaintiff has suffered severe, adverse emotional distress that continues to this day, which entitles Plaintiff to an award of compensatory and punitive damages for this distress in an amount as allowed by law, to be proven at trial, and fixed by a jury.

98.     As a direct and proximate result of the above-described actions and inactions, Plaintiff has lost income, and all other benefits to which she would have been entitled, had the acts and failures to act complained of herein never occurred, and she is entitled to an amount as allowed by law, to be proven at trial, and fixed by a jury.

99.     Defendant, willfully and intentionally, acted with malice and/or reckless indifference with respect to Plaintiff's rights under Ohio common law prohibiting sex discrimination and harassment in employment so as to entitle Plaintiff to an award of punitive

---

[2] Kerans v. Porter Paint Co., 61 Ohio St.3d 486 (1991).

damages, in addition to compensatory or any other damages to be awarded, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION:
### OHIO COMMON LAW – NEGLIGENT RETENTION

100.    All of the preceding paragraphs are realleged as if fully rewritten herein.

101.    The Kenton Manager had an employment relationship with Defendant because he was employed by Defendant at its Kenton Store as the store manager.

102.    Defendant, by way of its employment relationships with both the Kenton Manager and Plaintiff, owed a duty of care to Plaintiff to protect her from sexual harassment and assault by the Kenton Manager.

103.    The Kenton Manager was incompetent because, upon information and belief, he had a pattern of sexually harassing behavior and strong tendency to engage in this type of behavior, as harassing behavior is per se incompetence.

104.    Defendant had actual and/or constructive knowledge about the Kenton Manager's incompetence because it had previously failed to take appropriate corrective action regarding his pattern of sexually harassing behavior.

105.    The Kenton Manager's sexually harassing behavior and assault were foreseeable because the Kenton Manager had previously engaged in other sexually harassing behavior while employed by Defendant, but Defendant did not take the appropriate corrective action.

106.    The Kenton Manager's sexually harassing behavior and assault caused Plaintiff's injuries, as she would not have had to terminate her employment after a single workday or seek specialized treatment for her severe emotional distress but for her sexual harassment and assault by the Kenton Manager.

107.    By failing to effectively respond to the known instances of the Kenton Manager's past sexually harassing behavior, Defendant negligently retained the Kenton Manager.

108.    As the direct and proximate cause of Defendant's negligence described herein, Plaintiff suffered injuries, which entitles her to statutory, compensatory, punitive, and/or other damages.

**SEVENTH CAUSE OF ACTION:**
**OHIO COMMON LAW –**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

109.    All of the preceding paragraphs are realleged as if fully rewritten herein.

110.    Defendant intended to cause emotional distress or, alternatively, should have known that its conduct (whether by action or inaction) would result in serious emotional distress to Plaintiff when it behaved negligently by continuing to retain the Kenton Manager's employment despite his past instance(s) of sexually harassing behavior and conduct.

111.    Defendant's conduct of retaining the Kenton Manager despite his harassment was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

112.    As a direct and proximate result of Defendant's outrageous conduct described herein, Plaintiff suffered psychic injury.

113.    Plaintiff's emotional distress as a result of the above-described harassment and assault was serious and of such a nature that no reasonable person could be expected to endure it.

114.    Plaintiff is thus entitled to statutory, compensatory, punitive, and/or other damages as a result of Defendant's intentional infliction of emotional distress.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands back pay and benefits, front pay and benefits, and additional damages in an amount to be determined at trial, including compensatory damages, liquidated damages, punitive damages, emotional distress damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and any and all other relief the Court deems just and appropriate.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (100041)
1550 Old Henderson Rd.
Suite #126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
       agedling@mcoffmanlegal.com
       khendren@mcoffmanlegal.com

*/s/ Douglas A. Funkhouser*
Douglas A. Funkhouser (0064831)
**DOUGLAS A. FUNKHOUSER CO., L.P.A.**
765 South High Street
Columbus, Ohio 43206
Telephone: (614) 443-5404
Facsimile:  (614) 443-5408

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman